Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| CONSEJO DE TITULARES DEL CONDOMINIO VILLAS DEL FARO **Peticionario** V. MAPFRE PRAICO INSURANCE COMPANY **Recurrida** | KLCE202400665 | *CERTIORARI* procedente del Tribunal de Primera Instancia de Humacao Caso Núm: HU2019CV01340 Sobre: Código de Seguros y Otros |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

**Hernández Sánchez, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 27 de junio de 2024.

El 14 de junio de 2024, el Consejo de Titulares del Condominio Villas del Faro (Consejo de Titulares o peticionario) compareció ante nos mediante una *Petición de Certiorari* y solicitó la revisión de una *Orden* que se dictó 4 de abril de 2024 y notificó el 5 de abril de 2024 por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI o foro primario). Mediante el aludido dictamen, el TPI declaró No Ha Lugar una moción de los peticionarios, en la cual solicitaron a que se le ordenara a MAPFRE *Praico Insurance Company* (MAPFRE o recurrida) a realizar el ajuste y resolver la reclamación interpuesta por el Consejo de Titulares, pues la aseguradora había presentado un informe pericial que incluía un estimado de los daños que había sufrido el complejo residencial.

Por los fundamentos que expondremos a continuación, ***denegamos*** expedir el recurso de epígrafe.

I.

El 4 de septiembre de 2019, el Consejo de Titulares presentó una demanda sobre incumplimiento de contrato, violación al Código

Número Identificador

RES2024 _____

de Seguros de Puerto Rico y daños contra MAPFRE.[1] Sostuvo que, el peticionario tenía una póliza de seguros con la recurrida la cual cubría desde el 23 de marzo de 2017 hasta el 23 de marzo de 2018. Argumentó que la aludida póliza ofrecía una cobertura para edificios por daños ocasionados por vientos hasta un máximo de $25,000,000.00. No obstante, adujo que el 21 de julio de 2018, recibió dos (2) cheques de parte de su agente de seguros, General *Insurance Broker, Inc.* (GIB) por las cantidades de $260,502.61 dólares y $26,028.37. Dichos cheques fueron aceptados como adelantos. Insatisfecho con estas cantidades, solicitó que se le imputara a la recurrida el pago de $18,968,857.09, para compensar los daños sufridos a la propiedad, como consecuencia del paso del Huracán María. Además, solicitó el pago $1,896,885.71 por los daños presuntamente causados por el incumplimiento con los términos y condiciones de la póliza de seguros que se expidió a su favor.

Posteriormente, el 16 de diciembre de 2019, MAPFRE presentó una *Solicitud de Sentencia Sumaria.*[2] Puntualizó, que esta había realizado una oferta final por la cantidad de $286,030.98 y que el peticionario la aceptó. Sostuvo que, evidencia de ello, era que en la parte fontal de los cheques depositados aparecía el número de póliza, el número de pérdida o de reclamación y el siguiente lenguaje: "EN PAGO TOTAL Y FINAL DE LA RECLAMACIÓN POR HURACÁN MARÍA OCURRIDA EL DÍA 9/20/2017" o "EN PAGO DE RECLAMACIÓN POR DAÑOS OCASIONADOS POR HURACAN MARIA EN 09/20/2017".[3] Arguyó que, en el reverso de los cheques, se desprendía lo siguiente: "pago total y definitivo de toda obligación, reclamación o cuenta comprendida en el concepto indicado en el

---

[1] Véase, apéndice de la parte peticionaria, págs. 1-11.
[2] Íd., págs. 12-27.
[3] Íd., pág. 24.

anverso".[4] Ante esto, solicitó la desestimación con perjuicio de la demanda incoada por el Consejo de Titulares.

Subsiguientemente, atendida la solicitud de sentencia sumaria de la recurrida y una *Moción al Amparo de la Regla 36.6 de las de Procedimiento Civil para que se deje en Suspenso la "Solicitud De Sentencia Sumaria" Hasta Tanto se Complete el Descubrimiento de Prueba*, presentada por el peticionario, el 12 de diciembre de 2021, el TPI emitió una *Resolución*.[5] Por medio de esta, formuló las siguientes determinaciones de hechos:

1. La parte demandante adquirió de MAPFRE la póliza de seguros 1600178002046 que ofrece cubierta para los edificios y estructuras del Condominio Villas del Faro, el cual ubica en Carr. 760, Km. 3.3, Bo. Emajagua, Maunabo, Puerto Rico 00707.
2. El 20 de septiembre de 2017 dicha propiedad sufrió daños a consecuencia del paso del huracán María por Puerto Rico.
3. El 28 de septiembre de 2017, la demandante le notificó a MAPFRE su reclamación por los daños ocasionados a la propiedad por el paso del huracán María.
4. Luego de presentar la reclamación, la parte demandante fue representada por su agente de seguros, *General Insurance Brokers, Inc* ("GIB").
5. La parte demandada emitió dos cheques, a saber, uno el 19 de julio de 2018, el cheque número 1820706 por $260,502.61 en pago de la reclamación por los daños ocasionados a la propiedad asegurada por el paso del huracán María. El segundo cheque fue emitido el 9 de julio de 2018, cheque número 1820122 por la cantidad adicional de $26,028.37 para cumplimentar el pago de la reclamación conforme a las negociaciones habidas con GIB.[6]

En esencia, el TPI determinó que no había apoyo alguno en los autos para concluir que la oferta de MAPFRE cumplía con la normativa referente al pago en finiquito, por lo cual no se podía concluir que se materializó dicha figura. En ese sentido, declaró No Ha Lugar, la solicitud de sentencia sumaria. Específicamente, el foro primario explicó:

Un análisis de los documentos del expediente, revelan que existe una controversia real sobre los daños pagados por MAPFRE. Además, y según las alegaciones

---

[4] Íd., pág. 25.
[5] Íd., págs. 193-204.
[6] Íd., pág.195.

del demandante, existe controversia en cuanto a los daños reclamados y los que MAPFRE pagó. Es meritorio tener claro estos hechos, en específico, la aseguradora debe proveer una explicación, en la que se detalle lo que el asegurado reclamó, lo que la aseguradora evaluó y concedió, junto a las partidas específicas pagadas y aquellas excluidas, para que el pago no sea considerado una práctica desleal. **En este caso existe controversia en cuanto a la aceptación del pago como uno total y final de la reclamación. Es decir, al existir controversias de hechos no se puede pasar juicio sobre la totalidad de las cuestiones que fueron planteadas sin la celebración de una vista en la cual se dirima cuestiones de credibilidad y se presente la evidencia que amerite.** Es necesario que se celebre un juicio en su fondo. Así se impide que las partes sean privadas de su día en corte. [7] (Énfasis suplido)

Así las cosas, el 23 de diciembre de 2021, MAPFRE presentó una *Contestación a la Demanda y Reconvención*.[8] En esta, la recurrida negó ciertas alegaciones y levantó sus correspondientes defensas afirmativas. Asimismo, en la reconvención, expuso que el Consejo de Titulares le había notificado un aviso de accidente por los daños ocasionados por el Huracán María, y que, posteriormente, GIB le solicitó un estimado que incluía los daños de los edificios cubiertos por la póliza. Detalló que la reclamación de los peticionarios era por un total de $398,429. Por tal motivo, alegó que el Consejo de Titulares estaba incurriendo en fraude, falsas representaciones y, además, sobrestimaron sus daños por lo cual la póliza quedaba invalidada y, en consecuencia, MAPFRE quedaba relevada de cumplir con su deber de indemnizar. Del mismo modo, la recurrida solicitó que se condenara al peticionario a la devolución de lo pagado, el pago de todos los gastos de investigación, ajuste y legales incurridos por MAPFRE, los cuales estimó en una cuantía no menor de $250,000.00.

Por su parte, el 24 de enero de 2022, el Consejo de Titulares presentó una *Moción de Desestimación de "Reconvención" al Amparo*

---

[7] Íd., págs. 203-204.
[8] Íd., págs. 205-221.

*de la Regla 10.2(5) de Procedimiento Civil.*[9] Indicó que la reconvención instada por MAPFRE incumplió con la Regla 7.2 y 10.2(5) de Reglas de Procedimiento Civil 32 LPRA Ap. V y, por ende, procedía la desestimación de esta. Posteriormente, el 3 de febrero de 2022, MAPFRE presentó una *Oposición a Moción de Desestimación de Reconvención.*[10] Sostuvo que los planteamientos esgrimidos en la reconvención expresaban con claridad los hechos que presuntamente daban base a la concesión de un remedio.

Así pues, el 6 de junio de 2022, el foro primario dictó una *Sentencia Parcial,*[11] mediante la cual declaró Ha Lugar la solicitud de desestimación presentada por el Consejo de Titulares en cuanto la reconvención. De dicho dictamen, se desprende lo siguiente:

> El día 13 de diciembre de 2021 este tribunal resolvió mediante resolución que en este caso no se probaron los elementos que configuran el pago en finiquito. Precisamente resolvimos sobre la existencia de varias controversias, todas relacionadas a los pagos realizados por Mapfre mediante los dos cheques. Así, resolvimos específicamente que: "un análisis de los documentos del expediente, revelan que existe una **controversia real sobre los daños pagados por MAPFRE**. Además, y según las alegaciones del demandante, **existe controversia en cuanto a los daños reclamados y los que MAPFRE pagó**. Es meritorio tener claro estos hechos, en específico, la aseguradora debe proveer una explicación, en la que se detalle lo que el asegurado reclamó, lo que la aseguradora evaluó y concedió, junto a las partidas específicas pagadas y aquellas excluidas, para que el pago no sea considerado una práctica desleal. **En este caso existe controversia en cuanto a la aceptación del pago como uno total y final de la reclamación**. Es decir, al existir controversias de hechos no se puede pasar juicio sobre la totalidad de las cuestiones que fueron planteadas sin la celebración de una vista en la cual se dirima cuestiones de credibilidad y se presente la evidencia que amerite. Es necesario que se celebre un juicio en su fondo. Así se impide que las partes sean privadas de su día en corte".
>
> Fue por los precitados fundamentos que resolvimos que los pagos realizados por Mapfre] no fueron en ese entonces, ni son todavía suficientes para configurar el pago en finiquito. Por tanto, la reconvención es totalmente improcedente, toda vez que descansa en que se realizaron pagos que finiquitaron la obligación de

---

[9] Íd., págs. 222-235.
[10] Íd., págs. 236-242.
[11] Íd., págs. 245-254.

indemnizar que tenía Mapfre La reconvención parte de la premisa errónea de que luego de ser indemnizados la parte continua [sic] su reclamación fraudulentamente cuando en este caso lo que precisamente hay que determinar es si la indemnización fue conforme a derecho, o si, al contrario, Mapfre actuó de mala fe en la tramitación de la reclamación.[12]

Inconforme, el 22 de junio de 2023, MAPFRE presentó una solicitud de *Reconsideración.*[13] Mediante este escrito, arguyó que la reconvención contenía alegaciones suficientes para establecer que las actuaciones del Consejo de Titulares constituyeron fraude o falsas representaciones y si se tomaban por ciertas dichas alegaciones, se exponía un reclamo plausible que amerita un remedio. Por su parte, el 12 de julio de 2023, el peticionario presentó una *Oposición a "Reconsideración",*[14] y finalmente, el 13 de julio de 2023, el TPI declaró No Ha Lugar la moción de reconsideración y notificada el 14 de julio de 2023.[15] Insatisfecho con este resultado, los recurridos acudieron ante nos mediante una apelación y el 28 de septiembre de 2023, este panel emitió una *Sentencia* en la cual confirmamos la *Sentencia Parcial* dictada el 6 de junio de 2023 y en consecuencia, reiteramos la desestimación de la reconvención.[16]

Transcurridos varios eventos procesales los cuales no son necesarios detallar, el 1 de marzo de 2024, el peticionario presentó una *Moción Solicitando Orden sobre el Proceso de Investigación, Ajuste y Pago.*[17] En esencia, esbozó que el 21 de julio de 2023, MAPFRE presentó un informe pericial el cual concluyó que los daños del complejo residencial ascendían a $964,867.71. Alegó que, pese a este reconocimiento de que el condominio sufrió esos daños, la recurrida no le realizó oferta alguna ni precisó si esos números fue el resultado de un proceso de ajuste. Esgrimió que la recurrida se

---

[12] Íd., págs. 252-253.
[13] Íd., págs. 255-261.
[14] Íd., págs. 262-266.
[15] Íd., págs. 267-268.
[16] Íd., págs. 269-284.
[17] Íd., págs. 292-309.

encontraba incumpliendo con el *Código de Seguros de Puerto Rico* toda vez que esta no ha resuelto la reclamación en el término de noventa (90) días dispuesto en el Art. 27.162 de dicha legislación especial. Por este motivo, solicitó lo siguiente:

> Utilizar el Informe Pericial más reciente para culminar el proceso de ajuste en los próximos diez (10) días, y
>
> Pagar inmediatamente al Consejo la suma que surja de ese ajuste por concepto de cuantías que no están en disputa (luego de restar la cuantía ya pagada de $286,530.98, y sin términos o condiciones ulteriores), más los intereses por mora acumulados desde la presentación de la Demanda hasta la fecha en que se reciba el pago a razón de la tasa de 9.50%, y el 33% de la suma que surja del ajuste por concepto de honorarios de abogado, o
>
> En la alternativa, y ante la dejadez injustificada de MAPFRE, que el Tribunal determine que el Informe constituye el ajuste de la Aseguradora, y ordene a MAPFRE pagar inmediatamente al Consejo los $964,867.71 que surgen de ese informe, restando de dicha cantidad los $286,530.98 que MAPFRE pagó al Consejo en este caso por concepto de adelanto, para un pago neto de $678,336.73 más los intereses por mora acumulados desde la presentación de la Demanda hasta la fecha en que se reciba el pago a razón de 9.50%, y el 33% de dicha cantidad por concepto de honorarios de abogado en la cantidad de $223,851.12.[18]

El 14 de marzo de 2024, MAPFRE presentó una *Oposición a Moción Solicitando Orden sobre el Proceso de Investigación, Ajuste y Pago.*[19] Mediante este escrito, reiteró que esta parte ya había pagado y ajustado la reclamación y que esto se demostraría en el juicio en su fondo. Además, agregó que el informe pericial se preparó para propósitos de refutar los estimados de daños propuestos por el peticionario. Evaluados los escritos, el 5 de abril de 2024, el TPI emitió una *Orden* la cual incluyó la siguiente expresión:

> Se toma conocimiento de los fundamentos informados en las mociones solicitando orden sobre el proceso de investigación, ajuste y pago y su oposición, de los cuales este Tribunal entiende que existen controversias y asuntos de credibilidad que deben dilucidarse en el juicio. Se declara No ha lugar la solicitud de orden.[20]

---

[18] Íd., págs. 308-309.
[19] Íd., págs. 310-334.
[20] Íd., págs. 335-336

Inconforme, el 22 de abril de 2024, los peticionarios presentaron una *Moción de Reconsideración de Orden* en la cual esbozó que la solicitud de orden no requería dirimir asuntos de credibilidad sino hacer cumplir el deber de las aseguradoras de investigar, ajustar y resolver las reclamaciones que estas tienen ante sí.[21] El 14 de mayo de 2024, el TPI determinó No Ha Lugar a dicha reconsideración.[22]

Insatisfecho aun, el 14 de junio de 2024, los peticionarios acudieron ante nos mediante el presente recurso y formularon los siguientes señalamientos de error:

> **Primero: Erró el TPI al no ordenar a MAPFRE a culminar el proceso de ajuste y pago de conformidad con el Artículo 27.162 del Código de Seguros y la jurisprudencia aplicable.**
>
> **Segundo: el TPI erró al validar la postura de MAPFRE y no reconocer el derecho del consejo al pago de honorarios de abogado al amparo del Artículo 27.165 del Código de Seguros e intereses por mora**

Atendido el recurso, el 18 de junio de 2024, le concedimos a la parte recurrida hasta el 24 de junio de 2024 para que presentara su escrito en oposición. Oportunamente, el 21 de junio de 2024, MAPFRE, compareció ante nos con su *Oposición a Expedición de Certiorari y Alegato de la Parte Recurrida* y negó la comisión de los errores imputados. Con el beneficio de la comparecencia de las partes, procedemos a resolver el asunto ante nuestra reconsideración.

II.

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera

---

[21] Íd., págs. 337-343.
[22] Íd., págs. 344-345.

discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró,* supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

III.

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Luego de examinar el expediente a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el foro de primera instancia haya sido arbitrario, cometido un craso

abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones